Andrew G. Deiss (USB #7184)
  adeiss@joneswaldo.com
Billie J. Siddoway (USB #9710)
  bsiddoway@joneswaldo.com
JONES WALDO HOLBROOK & McDONOUGH PC
170 South Main Street, Suite 1500
Salt Lake City, Utah  84101
Telephone:  (801) 521-3200
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARY TISCORNIA, an individual; JENNIFER TISCORNIA, an individual; NICHOLAS E. TOUSSAINT, individually and as the Trustee of THE NICHOLAS AND SUSAN TOUSSAINT TRUST; MICHAEL J. NICOLAI, individually and as a Trustee of THE SAN FRANCISCO GRAVEL CO. INC. PROFIT SHARING PLAN; KATHERINE M. NICOLAI, an individual; JEFFREY M. NICOLAI, an individual; ALEXANDRIA P. NICOLAI, an individual; PETER P. SMITH, an individual; KEVIN T. SCARPELLI, individually and as a Trustee of the ERICA A. KELLY TRUST; CAROLINE M. SCARPELLI, an individual; CHRISTINA MARY TAYLOR, an individual; RICHARD J. WALL, INC., a California corporation; ROBERT GRANUCCI as the Trustee of THE ROBERT AND MURIEL GRANUCCI TRUST and THE GRANUCCI CHARITABLE REMAINDER TRUST; | **COMPLAINT** |
| Plaintiffs; | |
| vs. | Case No.: |
| NATURAL RESOURCES USA CORPORATION, a Utah Corporation, | Judge: |
| Defendant. | |

1037367.1

Mary Tiscornia ("Mary"), Jennifer Tiscornia ("Jennifer"), Nicholas E. Toussaint ("Nicholas") individually and as the Trustee of the Nicholas and Susan Toussaint Trust ("NST Trust"), Michael J. Nicolai ("Michael") individually and as the Trustee of the San Francisco Gravel Co. Inc. Profit Sharing Plan ("SFGC"), Katherine M. Nicolai ("Katherine"), Jeffrey M. Nicolai ("Jeffrey"), Alexandria P. Nicolai ("Alexandria"), Peter P. Smith ("Peter"), Kevin T. Scarpelli ("Kevin") individually and as the Trustee of the Erica A. Kelly Trust ("EAK Trust"), Caroline M. Scarpelli ("Caroline"), Christina Mary Taylor ("Christina"), Richard J. Wall, Inc. ("RJWI"), Robert Granucci ("Robert") as the Trustee of the Robert and Muriel Granucci Trust ("RMG Trust") and as the Trustee of the Granucci Charitable Remainder Trust ("GCR Trust"), (collectively "Plaintiffs"), by and through their undersigned counsel, hereby complain against Defendant Natural Resources USA Corporation ("NR" or "Defendant"), as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Defendant NR is a Utah corporation.

2. Mary is an individual residing in the state of California.

3. Jennifer is an individual residing in the state of California.

4. Nicholas is an individual residing in the state of California and the trustee of the trustee of the NST Trust.

5. Michael is an individual residing in the state of California and the Trustee of the SFGC.

6. Katherine is an individual residing in the state of California.

7. Jeffrey is an individual residing in the state of California.

8. Alexandria is an individual residing in the state of California.

1037367.1

9. Peter is an individual residing in the state of California.

10. Kevin is an individual residing in the state of California and the trustee of the EAK Trust.

11. Caroline is an individual residing in the state of California.

12. Christina is an individual residing in the state of California.

13. RJWI is a California corporation.

14. Robert Granucci is a resident of California and the trustee of the RMG Trust and the GCR Trust.

15. Jurisdiction is proper in this district pursuant to 28 U.S.C. §1332 based on complete diversity of citizenship among the Plaintiffs and the Defendant.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of the state in which this district is located.

## GENERAL ALLEGATIONS

17. NR has been in business for over 20 years, previously under the name of AmerAlia, Inc.

18. NR was a publicly traded company with the stock symbols "AALA" and then "NTRC".

19. NR is engaged in the business of identifying and developing natural resources.

20. NR's principal resources are sodium bicarbonate, water, and oil shale.

21. Natural Soda Holdings, Inc. is a wholly owned subsidiary of NR.

22. Natural Soda, Inc. is a wholly owned subsidiary of Natural Soda Holdings, Inc.

23. Natural Soda, Inc. is NR's primary operating entity.

1037367.1

24. NR produces sodium bicarbonate.

   a. NR owns leases to a nahcolite deposit located in Rio Blanco County, Colorado on 9,543 acres managed by the Bureau of Land Management ("BLM").

   b. The leases contain extensive high quality deposits of nahcolite, a naturally occurring sodium bicarbonate that is commonly called baking soda.

   c. NR's lease covers the only known naturally occurring high quality deposit of sodium bicarbonate in the world.

   d. NR is the second largest sodium bicarbonate producer in the world.

   e. NR produces sodium bicarbonate by solution mining, which involves pumping hot water underground to dissolve the underlying sodium bicarbonate beds and return the saturated liquid to the surface.  By reducing the temperature of the saturated liquid, sodium bicarbonate is crystallized.  Excess water is then removed by high speed centrifuging. The resultant mass is then further dried, screened, and packed.

   f. Solution mining is less costly than mining methods used by NR's competitors.

   g. There is a growing and well established market for sodium bicarbonate.

   h. In 2010, NR announced profits from its sodium bicarbonate activities and projected that profits would continue to increase.

25. In addition to its sodium bicarbonate resources, NR has water rights.

   a. NR perfected water rights in the Yellow Creed and White River Basin.

       b. NR's water rights were part of the Colorado River water system.

       c. NR is one of the few companies that owns water rights that are not fully utilized.

       d. NR is able to make use of its water rights for its own benefit and for use in the surrounding area.

       e. It is NR's position that the Colorado River basin is already in a water crisis, and the crisis is certain to continue into the future.

       f. NR intends to profit from its water rights.

26. In addition to sodium bicarbonate and water, NR has oil shale resources.

       a. NR applied for an oil shale lease in Colorado.

       b. NR was successful in its application to develop oil shale.

27. On September 1, 2010, NR announced a plan to extinguish approximately $13.3 million of debt through the issuance of a new class of preferred stock.

28. According to NR, on or about March 15, 2011, Green SEA Resources, Inc. ("Green Sea") acquired a controlling interest in NR.

29. By mid-2011, NR was basically debt free.

30. According to NR, on or about August 7, 2011, Green Sea's Board of Directors voted in favor of converting NR from a publicly traded company to a privately held company.

31. Green Sea formed GSR Acquisition Corp. ("GSRA"), a wholly owned subsidiary of Green Sea.

32. In the period immediately prior to December 1, 2011, Plaintiffs were the beneficial holders of 751,434 of regular common shares of NR and 80,685 restricted shares of NR.

33. In a letter dated December 1, 2011, GSRA purported to provide notice to NR's shareholders under Utah Code Section 16-10a-1322 that GSRA authorized the short-form merger of GSRA with and into NR with NR continuing as the surviving corporation (the "Notice of Merger").

34. The Notice of Merger proposed that each share of common stock had been automatically converted into the right to receive US$0.57 in cash, without interest.

35. In addition, the Notice of Merger provided information regarding the exercise of dissenter's rights under Part 13 of the Utah Revised Business Corporations Act.

36. The Notice of Merger further stated:

> You have the right, on or prior to January 16, 2012 (i.e., which is at least 30 days after the date of this [Notice of Merger]), to demand payment for your Shares in writing from [NR].

37. On December 29, 2011, NR sent an announcement to its shareholders (the "Announcement"), stating that the merger had been effected on December 28, 2011.

38. The Announcement stated that each share of common stock had been automatically converted into the right to receive US$0.57 in cash, without interest.

39. On December 14, 2011, Mary submitted to NR a form demanding payment by a dissenting shareholder.

40. On December 29, 2011, Wedbush Securities, Inc. ("WSI") sent a notice of dissenters' rights to NR on behalf of 25 beneficial shareholders, including but not limited to the Plaintiffs.

41. By its letter of December 29, 2011, WSI demanded, on behalf of 25 beneficial shareholders, a fair market value of $3.00 per share as payment for their holdings.

42. On January 5, 2012, NR sent a letter to Mary alleging that her demand for payment was defective.

43. On January 5, 2012, NR sent a letter to WSI alleging that its demand for payment was defective.

44. On January 9, 2012, Mary sent a second demand for payment to NR addressing the alleged defects identified by NR in its letter to her of January 5, 2012.

45. On January 12, 2012, WSI sent a second demand for payment to NR on behalf of 17 beneficial shareholders, including the Plaintiffs, addressing the alleged defects identified by NR in its letter to WSI of January 5, 2012.

46. On January 23, 2012, NR sent a letter to WSI informing WSI that its correspondence of January 12, 2012 remedied the deficiencies in the notice of dissenters' rights as to the 17 beneficial shareholders referenced in that letter, including the Plaintiffs, as well as the shares beneficially owned by Mary.

47. On January 23, 2012, NR sent a check to Mary in the amount of $.57 per share.

48. On January 23, 2012, NR sent a check to WSI in the amount of $.57 per share for the benefit of the 17 beneficial shareholders represented by WSI.

1037367.1

49. However, Mary and WSI maintained that the NR shares were worth $3.00 per share, and not $.57 per share.

50. Accordingly, neither Mary nor WSI cashed the checks from NR.

51. On March 22, 2012, WSI notified NR that it had not cashed the check and asked for the status of the demand for payment of $3.00 per share.

52. On April 3, 2012, NR sent a letter to WSI stating again that the correspondence from WSI of January 12, 2012, remedied the deficiencies as the 17 beneficial shareholders represented by WSI.

53. However, in its April 3, 2012 letter, NR took the position that, following January 23, 2012, none of the 17 beneficial shareholders represented by WSI provided notification to NR of the estimated value of the shares and demanded payment of that amount "within 30 days after the corporation made or offered payment for its shares" (quoting Utah Code §16-10a-1328(2)).

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

54. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

55. On December 1, 2011, Defendant provided a Notice of Merger including its proposal that each share of common stock would be automatically converted into the right to receive US$0.57 in cash, without interest.

56. The Notice of Merger established a deadline to exercise dissenters' rights of January 16, 2012.

57. On December 14 and December 29, 2011, Plaintiffs sent notice of their exercise of dissenters' rights to Defendant and demanded value of $3.00 per share.

1037367.1

58. On January 5, 2012, Defendant identified purported defects in Plaintiffs' attempts to exercise their dissenters' rights.

59. On January 9 and January 12, 2012, Plaintiffs remedied the purported defects identified by the Defendant.

60. On January 23 and on April 3, 2012, Defendant acknowledged that Plaintiffs had remedied the purported defects in their exercise of dissenters' rights.

61. However, Defendant has wrongfully taken the position that Plaintiffs did not properly make their demand for payment within 30 days of the date that NR made or offered payment for its shares as set forth in Utah Code §16-10a-1328(2).

62. In fact, Plaintiffs sent their demands for payment in the amount of $3.00 per share on December 14 and December 29, 2011, well within the 30 days of the date that NR offered payment of $.57 per share.

63. Accordingly, Plaintiffs are entitled to a declaration that they properly demanded payment from NR in accordance with Utah Code §16-10a-1328(2).

## SECOND CLAIM FOR RELIEF
### Payment of Value

64. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

65. On December 14 and December 29, 2011, Plaintiffs demanded that Defendant pay a fair value of $3.00 per share.

66. On January 23, 2012, Defendant issued checks to Plaintiffs or their representative in the amount of $.57 per share.

67. In the event that a demand for payment is unresolved, Utah Code § 16-10a-1330 requires the corporation to commence a proceeding for the judicial appraisal of shares within 60 days after receiving the payment demand.

68. The corporation is required to make all dissenters whose demands remain unresolved parties to the proceeding.

69. If the corporation fails to commence the proceeding within 60 days, then the corporation must pay each dissenter whose demand remains unresolved the amount demanded.

70. Defendant failed to commence a proceeding with 60 days for judicial appraisal of the Plaintiffs' unresolved demand for $3.00 per share.

71. Accordingly, Plaintiffs are entitled to an award against Defendant in the amount of $3.00 per share for each of Plaintiffs' respective shares.

### THIRD CLAIM FOR RELIEF
### Attorneys Fees and Costs

72. Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

73. Pursuant to Utah Code § 16-10a-1330, the Court should assess the fees and expenses of counsel and experts for the respective parties against the Defendant and in favor of the Plaintiffs in an amount the Court finds equitable.

### PRAYER FOR RELIEF

For the reasons set forth herein, Plaintiffs request the following relief:

1. For a declaration that Plaintiffs properly demanded payment from Defendant in accordance with Utah Code §16-10a-1328(2).

2. For an award against Defendant and in favor of Plaintiffs in the amount of $3.00 per share for each of Plaintiffs' respective shares.

1037367.1

3. For an award of attorneys' fees and costs against Defendant and in favor of Plaintiff pursuant to Utah Code § 16-10a-1330 and to the maximum extent allowed by law; and

4. For such other and further relief as the Court deems proper.

Respectfully submitted this 20th day of June, 2012.

        JONES WALDO HOLBROOK & McDONOUGH PC


      /s/ Billie J. Siddoway
    By: Andrew G. Deiss
      Billie J. Siddoway
      *Counsel for Plaintiffs*